UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA

                                      S1 21 CR 530 (SHS)

          -against-

                                        **<u>NOTICE OF MOTION</u>**

ANDREW DOWD,

               Defendant.

--------------------------------------------------------X

       **PLEASE TAKE NOTICE,** that upon the annexed affirmation of Kevin J. Keating, attorney for Andrew Dowd, and the accompanying exhibits, and upon all prior pleadings and proceedings had herein, the undersigned with move this Court before the Hon. Sidney H. Stein at the United States District Court, in the Southern District of New York located at 500 Pearl Street, New York, New York for the following relief:

       1.     An Order pursuant to 28 U.S.C. §455(a) recusing this Court from presiding over the trial of this matter; and

       2.     For such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       October 4, 2022

                                Respectfully submitted,

                                LAW OFFICE OF KEVIN J. KEATING, P.C.

                                /s/ *Kevin J. Keating*
                                By: Kevin J. Keating, Esq.
                                *Attorney for Defendant, Andrew Dowd*
                                666 Old Country Road, Suite 900
                                Garden City, New York 11530
                                (516) 222-1099
                                Email: kevin@kevinkeatinglaw.com

To:    AUSA Alexandra Rothman
         AUSA Nicholas W. Chiuchiolo
         AUSA Nicholas Folly
         AUSA Danielle Kudla
         All Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

UNITED STATES OF AMERICA

             -against-

ANDREW DOWD, et al.

               Defendants.
---------------------------------------------------------X

S1 21 CR 530 (SHS)

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S
<u>MOTION TO RECUSE</u>**

<u>**PRELIMINARY STATEMENT**</u>

Andrew Dowd respectfully moves for recusal pursuant to 28 U.S.C. § 455(a).  As set forth below, the instant motion is based upon public statements made by Your Honor while presiding over the matter of *United States v. Duncan, et al*., 18 CR 289, which have recently come to the undersigned counsel's attention.  During the course of those proceedings, the Court repeatedly opined that Dr. Dowd was more criminally culpable than the defendants whom had been prosecuted to date, and urged the Government to pursue criminal charges against Dr. Dowd and other similarly situated individuals.  Because such comments could reasonably be perceived as advocacy for a particular outcome, we respectfully submit that this is a situation where the Court's impartiality might reasonably be questioned.

<u>**FACTUAL BACKGROUND**</u>

In 2018, the Government indicted five individuals on charges of mail fraud, wire fraud, and conspiracy.  The Government alleged that these individuals – Peter Kalkanis, Bryan Duncan, Kerry Gordon, Robert Locust, and Ryan Rainford – were involved in a scheme to orchestrate slip and fall accidents, for purposes of bringing fraudulent personal injury lawsuits.

In April of 2019, Peter Kalkanis pled guilty pursuant to a cooperation agreement. Thereafter, in May of 2019, Bryan Duncan, Robert Locust, and Ryan Rainford proceeded to trial before Your Honor.  At that trial, the Government introduced evidence that Messrs. Duncan,

Locust, and Rainford recruited individuals to stage accidents for money. These "runners" worked for Kalkanis – a "broker" who connected the prospective plaintiffs with lawyers and doctors, and who arranged for the funding of their medical treatment and lawsuits. Trial evidence established that the runners scouted commercial locations, searching for defects in the pavement. Thereafter, they would direct prospective plaintiffs to those locations in order to stage a fall. An ambulance would be summoned, and the prospective plaintiffs would be brought to the emergency room, where they complained of pain. Afterwards, the runners would bring the prospective plaintiffs with their discharge papers to a lawyer's office. *See* Trial Transcript from *United States v. Duncan*, 18 CR 289, p. 997-999. Thereafter, Mr. Kalkanis met with the runners and their prospective plaintiffs at the attorney's office, where they would review the plaintiffs' fabricated stories. *Id*. at 1024.

Plaintiffs were directed to claim back, knee, or shoulder injuries. *Id*. at 1022. Kalkanis would arrange for MRIs through a chiropractor. In response to pressure from Kalkanis, the MRI providers at times produced positive reads showing the presence of back, knee, or shoulder injuries. *Id*. at 1062. Kalkanis thereafter arranged for the prospective patients to bring those positive MRIs to orthopedists, including Dr. Andrew Dowd. Patients were coached by Kalkanis as to how they should present their injuries and their degree of pain. *Id*. at 1496-97. Kalkanis offered each plaintiff "an incentive" of $1,000 to undergo surgery, while also arranging funding to pay for such surgeries, through high-interest loans.

At trial, Kalkanis testified that Dowd and other doctors knew that the accidents were staged, and claimed to have had specific conversations to that effect. *Id*. at 1066. Kalkanis further claimed that the personal injury attorneys and the managers of the funding company also knew that the accidents were staged. *Id*. at 1072.

On May 28, 2019, all three of the runner-defendants were convicted.

2

Throughout the course of the trial and at sentencing, lawyers for these defendants argued that the runners were at the bottom of the conspiracy ladder, and that the most culpable individuals – the lawyers, doctors, and funders – had gone unpunished.  In response, this Court repeatedly expressed its agreement with this view, while *urging* the Government to continue its investigation and to pursue charges against these alleged higher-up individuals.  Hence, on January 7, 2020, at Mr. Duncan's sentencing, the Court stated:

> Of course, most of the money went to you, Kalkanis, the funders, the lawyers, and the doctors.
>
> And I would urge the government to continue their investigation here, because, based on this testimony, the lawyers and the doctors were heavily involved in this.

1/7/20 Sent. Tr. at p. 27.  (Exhibit A)

A year later, at the sentencing of Mr. Locust, the Court again renewed its call for the prosecution of persons whom the Court referred to as "the corrupt lawyers, the corrupt doctors." During that colloquy, the Court opined that such persons were more culpable than the defendants who had been tried to date, and stated that it had made its position "clear" to the Government:

> Defense Counsel: Your Honor, I think, under the circumstances of this case, the worst people involved in this conspiracy were people who had never, ever been prosecuted.
>
> The Court: You know what sir, I'm not sure I disagree with you but those people are not in front of me.
>
> Defense Counsel: Sure
>
> The Court: I assume, I would hope, and I made it clear to the government during the trial and at other proceedings in this case, that the government is pursuing the corrupt lawyers, the corrupt doctors who were involved in this scheme. That was a theme during the trial, not in the hearing of the jury because I wasn't going to allow the argument that other people should be here and they're not, that's not the issue. I'm not disagreeing with you but I'm not, a prosecutor, I'm a judge. I would hope the government is following through on a continuing investigation. I don't know whether they are or not. . .

*     *     *

. . . there are certainly a number of people here in the conspiracy who were above – in the conspiracy – the defendant's who have been tried.

7/9/21 Sent. Tr. at p. 15-16.  (Exhibit B)

The following month – on August 23, 2021 – the Government did exactly what the Court had been urging, indicting the lawyers, doctors, and the funder.  Among those indicted was our client, Dr. Dowd, who is currently scheduled for trial on November 28, 2022.

## ARGUMENT

We are respectfully moving for Your Honor's recusal based upon the opinions which the Court has previously expressed concerning Dr. Dowd, including the Court's expressed belief that Dr. Dowd is "corrupt" and was "involved in the scheme."  More importantly, we are seeking recusal because a reasonable person could conclude that Your Honor urged the Government to indict Dr. Dowd and that the Government responded to such recommendation – suggesting that the Court has a vested and predetermined interest in the outcome of this case.

Pursuant to 28 U.S.C. § 455(a), a judge should recuse himself "in any proceeding in which his impartiality might reasonably be questioned."  In this regard, the statute reaches not only actual conflicts of interest (enumerated in § 455[b]), but also situations where a reasonable person might perceive the *appearance* of bias or partiality.

The case law recognizes that in the course of proceeding over a case, judges can and frequently will form opinions concerning the litigants.  When a judge merely expresses an opinion based upon the evidence which he has seen or heard in court, that will not typically, in and of itself, merit recusal.

However, the expression of a negative opinion concerning a litigant may warrant recusal if either: (a) the opinion is based upon "extrajudicial" information – *i.e*., information external to the proceeding themselves; or (b) the expressed opinion reveals such a high degree of favoritism

4

or antagonism as to make fair judgment impossible.  The most often-cited authority on this issue is *Liteky v. United States*, where the Supreme Court noted:

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 1157 (1994).

We respectfully submit that the instant case presents a somewhat unique factual pattern, because a reasonable person could conclude that Your Honor's comments and pointedly-expressed opinions about the culpability of the "corrupt lawyers and doctors," and the desirability of bringing a prosecution against such persons, spurred the Government to take action by issuing the instant indictment.  In this regard, such comments could reasonably be perceived as going beyond the mere expression of opinion, and could constitute advocacy for a particular result – *i.e*., the arrest and prosecution of Dr. Dowd.

Courts – including the Second Circuit – have held that recusal is appropriate where a district court could reasonably be perceived as having expressed a desire to see a particular outcome as to a specific defendant.  *See United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992) ("Recusal is appropriate when a judge expresses a personal bias concerning the outcome of the case at issue."); *see also Washington v. William Morris Endeavor Entm't, LLC*, 2014 U.S. Dist. LEXIS 41277, at *2 (S.D.N.Y. Mar. 24, 2014) (same); *United States v. Liburd*, No. 17-cr-296 (PKC), 2019 U.S. Dist. LEXIS 11850, at *24 (E.D.N.Y. Jan. 24, 2019) ("The Second Circuit has

held that an objective observer would entertain such doubts when a judge expresses a personal bias concerning the outcome of the case at issue.").

The most oft-cited authority in this regard is *United States v. Diaz*, 797 F.2d 99 (2d Cir. 1986). In that case, the defendant had appealed to the Second Circuit after being convicted on various charges, including a violation of 18 U.S.C. § 924(c). On appeal, the Second Circuit reversed the § 924(c) charge, and remanded the case back to the district court for resentencing. The district court judge thereafter communicated with the United States Attorney's Office, as well as his own senator, expressing his belief that § 924(c) should be amended to encompass the defendant's conduct. The United States Attorney's Office responded to the judge with updates on their stalled efforts to have the statute amended. The district court eventually proceeded to resentence the defendant to a cumulative sentence that was identical to his previously-imposed sentence.

Diaz appealed again, at which point the Second Circuit ordered the case reassigned, noting that "the district court's impartiality with respect to the resentencing proceeding might reasonably be questioned," in light of the court's actions in advocating for a particular outcome.

A similar result was reached *in United States v. Antar*, 53 F.3d 568 (3d Cir. 1995), where the district court judge stated at sentencing: "My object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others." In *Antar*, the same judge had previously handled a civil case involving the same allegations of fraud. Hence, his opinion and familiarity with the case did not come from any extrajudicial source. Nevertheless, on appeal, the Third Circuit found that his comments, and his expressed desire to see a particular outcome, gave rise to the appearance of bias:

> There is no question that, as the *Liteky* Court put it, "disinterestedness does not mean child-like innocence." And, "not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in

6

earlier proceedings as it has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Id.* Thus, it certainly would be understandable if the district judge, based on his experience from the civil proceeding, was "exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person." *Id.*  But, when a judge has formed opinions during a civil case, he or she certainly must be careful not to have those beliefs influence his or her *goal* in the criminal case.

*United States v. Antar*, 53 F.3d 568, 578 (3d Cir. 1995).

In summary, the case law distinguishes between the mere expression of an opinion, and advocacy for a particular outcome.  In light of the above authority, we respectfully submit that this is a case where the Court's' impartiality could reasonably be questioned.  The Court's comments – describing Dr. Dowd as "corrupt" and "heavily involved" in the scheme – suggest that the Court had prejudged Dr. Dowd's culpability long before he was even indicted.  This assumption of guilt is particularly troubling, because Dr. Dowd has had no opportunity to defend himself, and because the Government's case against Dr. Dowd is quite distinct and *much* weaker than its earlier case against the runners.  The culpability of the runners was clear – such individuals personally orchestrated and oversaw staged accidents.  By way of contrast, Dr. Dowd played no role in such conduct, which typically occurred months before Dowd rendered treatment.  The patients he treated were coached to lie to Dowd about their accident and symptoms, and presented him with MRIs which showed actual injuries.

It goes without saying that Dr. Dowd is entitled to the presumption of innocence.  And yet, the Court's repeated unambiguous comments reveal that it has prejudged the case against Dr. Dowd, and found his conduct to be – not merely criminal – but morally outrageous.  Indeed, most recently, at the plea hearing of Adrian Alexander, this Court *again* railed against conduct of the "highly educated professionals – doctors, lawyers" who "were involved in a scheme that boggles

the mind . . ."  The Court described the conduct of such professionals as "a frightening insight into human nature."  8/30/22 Change of Plea Hearing (ECF 79), at p. 24.  (Exhibit C)

More troublingly, a reasonable person could easily conclude that the Court's repeated statements – urging the Government to pursue charges against Dr. Dowd, and expressing "hope" that it would do so – crossed the line into advocacy for a particular outcome, which created an appearance that the Court has a vested interest in the Defendants' successful prosecution.  Indeed, given the temporal proximity between the Court's comments in July, 2021 and the issuance of the indictment (in late August 2021), one might reasonably wonder whether the indictment in this case was, in fact, spurred by the Court's comments.

Accordingly, and out of an abundance of caution, we are respectfully urging the Court to recuse itself from presiding over trial of the Defendant.

## CONCLUSION

For the reasons set forth above, the Defendant Andrew Dowd respectfully moves for recusal pursuant to 28 U.S.C. § 455(a).

Dated:  Garden City, New York
        October 4, 2022

Respectfully submitted,

LAW OFFICE OF KEVIN J. KEATING, P.C.

/s/ *Kevin J. Keating*

By: Kevin J. Keating, Esq.
*Attorney for Defendant, Andrew Dowd*
666 Old Country Road, Suite 900
Garden City, New York 11530
(516) 222-1099
Email: kevin@kevinkeatinglaw.com